UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Charles Longlois,

       Plaintiff,

                                  No. 13-cv-3345 (JNE/SER)

v.                                    ORDER

Stratasys, Inc.,

       Defendant.

Plaintiff Charles Longlois brings this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, alleging that he worked overtime hours for which his former employer, Defendant Stratasys, Inc., did not properly compensate him.  The case is before the Court on the parties' cross-motions for summary judgment and on Longlois' motion to exclude the testimony of Stratasys' two expert witnesses.

For the reasons and in the manner set forth below, both of Longlois' motions are granted in part and denied in part, while Stratasys' motion is denied.

**<u>Background</u>**

Stratasys manufactures and distributes three-dimensional printers.  The company provides installation and maintenance services for those printers through its Field Service Engineers ("FSEs"), salaried employees in the customer service department who work out of their homes and travel to client sites on assignments given to them by a supervisor.  Stratasys hired its first FSE in 1995, at which time it classified the position as exempt from the FLSA's overtime requirements.

1

Stratasys first hired Longlois as an FSE in 1997; he left the company in 2000.  Longlois was re-hired as an FSE in 2007, and he continued working for Stratasys in that capacity until August of 2014.  Longlois' second stint with Stratasys is the focus of this action.

During that period, one of Longlois' colleagues, Greg Holaway, raised concerns that FSEs were routinely working substantial overtime hours for which they were not being properly compensated.  Holaway was subsequently fired, for reasons that are disputed.  Thereafter, in April of 2012, Holaway filed a putative collective action in this District, alleging that Stratasys was in violation of the FLSA with respect to its classification of FSEs as exempt from the statute's overtime requirements and its corresponding failure to pay the FSEs a premium for their overtime hours.  *Holaway v. Stratasys et al.*, No. 12-cv-998 (PAM/JSM).  That case was conditionally certified as a collective action in October of 2012.  Notice was then provided to all United States-based FSEs who had worked for Stratasys since October of 2009.  Three of them – Longlois, Duane Schwarze, and Dale Wilson – opted in to the lawsuit.  (Wilson was subsequently dismissed from the case on the joint stipulation of the parties.)

In January of 2013, as the *Holaway* case moved forward, Stratasys reclassified its FSEs as non-exempt employees.  With this change, Stratasys began compensating Longlois and his fellow FSEs for any overtime worked using the "fluctuating workweek" method described at 29 C.F.R. § 778.114.  Longlois agreed to this arrangement, and therefore seeks no damages for the period after January of 2013; his claim relates only to the preceding period, during which it is undisputed that Stratasys never paid him or any other FSE an overtime premium.

Discovery proceeded in the *Holaway* matter through the fall of 2013, at which time Stratasys filed a motion to decertify the case as a collective action.  In a decision that issued in October of 2013, the *Holaway* court granted that motion, finding that Holaway, Longlois, and

Schwarze's claims each required a fact-specific inquiry that would negate any efficiency to be gained from maintaining the case as a collective action. As a result, Longlois and Schwarze were removed from the *Holaway* action. That case then moved forward with Holaway as the lone plaintiff.

After the decertification of *Holaway*, Longlois and Schwarze jointly filed this action against Stratasys in December of 2013, asserting a single count under the FLSA for unpaid overtime compensation. Later that same month, the Court in *Holaway* granted Stratasys' motion for summary judgment. In so doing, the Court did not reach the question of whether Stratasys had misclassified Holaway as an exempt employee. Instead, it concluded that Holaway's claim failed, regardless of whether he had been misclassified, because he had not put forth sufficient evidence on which a jury could find that he had worked overtime hours for Stratasys. Holaway appealed that decision.

Meanwhile, this action proceeded. In May of 2014, the United States Magistrate Judge severed Schwarze from the case, an order which the Court affirmed in June of 2014. Schwarze has since filed a separate case of his own against Stratasys. *Schwarze v. Stratasys, Inc. et al.*, No. 14-cv-2043 (PJS/JJK).

Thus proceeding alone here, Longlois filed a motion in September of 2014 seeking partial summary judgment on a number of the affirmative defenses Stratasys asserted in its Answer, as well as a *Daubert* motion targeting Stratasys' two expert witnesses. After briefing on those motions was completed, the Eighth Circuit issued its decision in *Holaway*, affirming the district court's grant of summary judgment to Stratasys. *Holaway v. Stratasys*, 771 F.3d 1057 (8th Cir. 2014). Shortly thereafter, in November of 2014, Stratasys filed its motion for summary judgment here. The Court heard oral argument on the three pending motions together.

**Discussion**

Longlois claims that Stratasys violated the FLSA by failing to pay him at overtime rates when he worked more than forty hours in a week during the period prior to January of 2013.

As a general rule subject to certain exceptions, the FLSA prohibits an employer from "employ[ing] any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty] hours . . . at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  *See also Jarrett v. ERC Properties, Inc.*, 211 F.3d 1078, 1081 (8th Cir. 2000) ("The FLSA requires covered employers to compensate non-exempt employees at overtime rates for time worked in excess of statutorily-defined maximum hours.").  If an employer violates this provision, the statute provides for the employee to recover, through a private cause of action, "in the amount of [his] unpaid overtime compensation . . . and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).

Longlois' claim for those damages implicates a number of discrete issues, which the parties address in depth on the three pending motions.  The Court begins with Longlois' *Daubert* motion, and will then move to the parties' competing motions for summary judgment.

I.       ***Daubert* motion.**

With his *Daubert* motion, Longlois urges the Court to exclude the proposed testimony of the two expert witnesses Stratasys has designated to testify at trial, Alexander Passantino and Neil Lapidus.

It should be noted at the outset that the parties initially debated the timing of Longlois' motion.  Stratasys previously designated Passantino and Lapidus as its testifying experts in the

*Holaway* matter, at a time when Longlois and Schwarze were participating in that suit as opt-in

plaintiffs. Accordingly, the reports that were disclosed and the depositions that were taken of

Passantino and Lapidus during discovery in the *Holaway* litigation pertain not only to Holaway's

unpaid overtime claim, but also to Longlois' and Schwarze's.

In this action, the Scheduling Order called for Stratasys to disclose the identity of its

expert witnesses by November 1, 2014, for their reports to be provided to Longlois by December

1, and for their depositions to be completed by December 15. Longlois, however, filed his

*Daubert* motion in late September of 2014, before Stratasys had designated any experts here and

more than a month before its deadline for doing so. Consequently, Stratasys objected to the

motion as premature, but it did also respond on the merits of the issues raised by Longlois.

Prior to oral argument, Longlois informed the Court that Stratasys did in fact designate

both Passantino and Lapidus as its testifying experts by the November 1 deadline, and Stratasys

did not persist in its objection to the timing of the *Daubert* motion at the hearing. With that said,

there has been no mention from the parties that either Passantino or Lapidus provided Longlois

with a new or supplemental report specific to this case, or that any additional depositions were

taken of them. Therefore, in the absence of any indication to the contrary from the parties, the

Court understands the expert reports and depositions taken during the *Holaway* litigation and

submitted by Longlois to be the operative materials here, and considers the merits of the *Daubert*

motion to have been fully argued.

Turning to the substance of Longlois' motion, then, it is Stratasys' burden as the

proponent of the experts' testimony to establish its admissibility by a preponderance of the

evidence. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592 n.10 (1993). To do

so, Stratasys must show that the proposed testimony meets the "three prerequisites" of Federal

5

Rule of Evidence 702: (1) that the witness is "qualified as an expert by knowledge, skill, experience, training, or education," such that he is able to "assist the trier of fact" with matters within his area of expertise; (2) that his testimony will be relevant, such that it "will help the trier of fact to understand the evidence or to determine a fact in issue"; and (3) that his testimony will be "reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires." *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (internal quotation omitted); Fed R. Evid. 702.

For the reasons discussed below, Lapidus' proposed testimony is admissible, but Passantino's is not.

### A. Passantino.

Alexander Passantino is an attorney, now in private practice, who formerly worked in the Department of Labor, including serving as the Acting Administrator of the Wage and Hour Division. The depth of Passantino's experience working with the wage and hour provisions of the FLSA, and with the DOL's regulations and interpretations of them, is evident.

Nonetheless, the testimony Stratasys proposes to elicit from Passantino is clearly inadmissible. In his report, Passantino offers several "[o]pinions regarding the Wage and Hour Division's positions and practices with respect to calculating back pay." In particular, Passantino asserts that the fluctuating workweek method is the proper way to calculate unpaid overtime compensation where "a non-exempt employee was paid a salary, but not overtime"; critiques the damages calculation made by the three pre-decertification *Holaway* plaintiffs as inconsistent with the FLSA and the regulations; and sets forth his view as to which sort of work-related travel time "should be treated as FLSA hours worked."

Despite the way Stratasys has couched it, Passantino's report is a series of "legal conclusions with no analytical reasoning or support" that, if admitted, would inappropriately supplant "the judgment of the district court." *In re Acceptance Ins. Companies Securities Litigation*, 423 F.3d 899, 905 (8th Cir. 2005). It is fundamental that "expert testimony on legal matters is not admissible. . . . Matters of law are for the trial judge, and it is the judge's job to instruct the jury on them." *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003). *See also Police Retirement System of St. Louis v. Midwest Inv. Advisory Service, Inc.*, 940 F.2d 351, 357 (8th Cir. 1991) (finding error in allowing the "former head of the Securities and Exchange Commission's Division of Market Regulations and a lawyer" to "lecture[] the jury on what § 28(e) [of the Securities Exchange Act] meant" because "[e]xplaining the law is the judge's job" and the expert's "extensive law-related expert testimony allowed him to usurp the judge's place").

Longlois' motion to exclude Passantino's testimony is therefore granted.


**B. Lapidus.**

Longlois' motion to exclude the proposed testimony of Neil Lapidus, however, is unavailing. Lapidus is an experienced Certified Public Accountant who was retained by Stratasys to review the evidence and render an opinion regarding the hours that the three pre-decertification *Holaway* plaintiffs worked during each week in the three years between August of 2009 and August of 2012. Lapidus' report includes a spreadsheet in which he entered his conclusions regarding the number of hours Longlois spent each day with clients, doing administrative work, and traveling, and it also indicates the dates on which Longlois took paid time off and in what amounts.

7

By Lapidus' tally, Longlois worked a total of 328.75 overtime hours between August of 2009 and August of 2010; 597 overtime hours between August of 2010 and August of 2011; and 396.45 overtime hours between August of 2011 and August of 2012.  Lapidus also opines that, using the fluctuating workweek method to calculate overtime pay, Longlois would be owed approximately $10,000 in "back wages" for the latter two years' worth of overtime, or $13,600 for all three.

Longlois contends that Lapidus is not qualified to testify on these matters because he is not, as his deposition made clear, an expert in the FLSA.  Furthermore, Longlois claims that Lapidus' lack of independent knowledge of the statute's wage and hour provisions led him to rely unquestioningly on the legal positions expressed in Passantino's report and to "invent" his own methodology for determining the hours that Longlois worked.

These objections are unpersuasive.  Longlois' claim is that he worked overtime hours for which he was not properly compensated.  Stratasys did not keep a precise record of Longlois' hours during the time period relevant to that claim.  It is evident, though, that there does exist a variety of other evidence – contemporaneous scheduling and payroll records, travel receipts, and computer log-in information, for instance – from which Longlois' workdays could be reconstructed.  Lapidus has done one such reconstruction, based on his review and synthesis of, among other evidence, three years' worth of calendar entries and expense reports.  There is no doubt that an accountant with Lapidus' credentials is fully qualified to perform this type of analysis, that his conclusions are based on ample data, and that his testimony will be of assistance to the jury.

This, of course, is no commentary on whether Lapidus' reconstruction will be persuasive. The accounting Lapidus conducted necessarily involves interpretation of the records on which it

is based and requires assumptions to be drawn from them – for example, that Longlois took a one hour meal break on all days for which his expense report contained a lunch receipt.  Longlois takes issue with these aspects of Lapidus' proposed testimony, but "mere disagreement with the assumptions and methodology used does not warrant exclusion of expert testimony." *David E. Watson, P.C. v. U.S.*, 668 F.3d 1008, 1015 (8th Cir. 2012) (quoting *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007)).  If Longlois believes – as his motion makes clear – that "other assumptions and methods were more appropriate" for determining his overtime hours and calculating the appropriate compensation for them, he will "ha[ve] the opportunity to make this apparent through cross-examination." *Id.* (internal quotation omitted).  It will then be for the jury to decide the credibility and weight that should be afforded to Lapidus' testimony.

For similar reasons, Lapidus' use of Passantino's report is not disqualifying, regardless of whether Passantino's testimony is itself admissible.  *See* Fed. R. Evid. 703.  Lapidus indicates in his report that he relied on Passantino's report in two ways: to set the parameters for his analysis regarding the hours Longlois expended in compensable vs. non-compensable travel time, and to determine that the fluctuating workweek is the proper method for calculating the compensation that would be owed to Longlois for his past overtime hours.

Longlois will, as noted, be free to challenge at trial the framework within which Lapidus conducted his accounting.  But, significantly, Longlois has not shown here that either of the premises Lapidus derived from Passantino's report is flawed.  As discussed below in relation to the parties' summary judgment motions, Longlois has not established that using the fluctuating workweek method to calculate his unpaid overtime compensation would be inappropriate.  And as for the compensability of travel time, Longlois has made no argument at all that the rules outlined in Passantino's report and applied by Lapidus are legally unsound.

Longlois' motion to exclude Lapidus' testimony is therefore denied.

## II.        Summary judgment motions.

Turning now to summary judgment, the parties' cross-motions are, at bottom, founded on fundamentally different visions of the record.  In Longlois' view, the record demonstrates unequivocally that he worked overtime hours for which he should have been, but was not, paid at overtime rates, and a trial is therefore needed only to determine the amount of his recovery.  In Stratasys' view, however, no trial at all is warranted because the record cannot sustain Longlois' claim for unpaid overtime compensation.  According to Stratasys, Longlois' evidence is insufficient to establish that he worked any particular overtime hours, and even if not, Longlois was not entitled to be paid an overtime premium for those hours in addition to his salary.

These motions are, of course, governed by Federal Rule of Civil Procedure 56(a), under which summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Furthermore,

> "[t]he burden of demonstrating there are no genuine issues of material fact rests on the moving party, and we review the evidence and the inferences which reasonably may be drawn from the evidence in the light most favorable to the nonmoving party.  *Davis v. Jefferson Hosp. Ass'n,* 685 F.3d 675, 680 (8th Cir.2012) (internal quotation marks and citation omitted).  The non-moving party must substantiate his allegations by "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy."  *Mann v. Yarnell,* 497 F.3d 822, 825 (8th Cir.2007) (alteration in original) (quotation marks and citation omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir.2011) (en banc) (quotation marks and citation omitted).

*Holaway*, 771 F.3d at 1058-59.

As explained below, these standards dictate that neither of the parties prevail on their motion in its entirety.  Summary judgment is, however, appropriate on the discrete issue of misclassification.  Trial will be needed to resolve the rest.

**A.  Misclassification.**

The first issue for consideration is whether Stratasys properly determined that Longlois was exempt from the FLSA's overtime protections prior to the company's decision to pay all of its FSEs an overtime premium under the fluctuating workweek method beginning in January of 2013.  Longlois argues that, as an FSE, he was a "blue collar" worker who should always have been classified as non-exempt and therefore entitled to an overtime premium.  Stratasys, though, maintains that Longlois was appropriately deemed to be an exempt "white collar" employee in the period before it reclassified him, along with all of the other FSEs, as non-exempt.[1]

As the exemption of an employee from the FLSA's overtime protections is an affirmative defense for an employer accused of failing to pay overtime wages, the burden falls on Stratasys here to prove that it correctly classified Longlois as exempt.  *McDonnell v. City of Omaha, Neb.*, 999 F.2d 293, 295-96 (8th Cir. 1993), *rejected on other grounds*, *Auer v. Robbins*, 519 U.S. 45 (1997).  That burden is not insignificant: the exemptions are "narrowly construed in order to further Congress' goal of providing broad federal employment protection," and Stratasys "must

---

[1]    Whether an exemption applies to an employee is a matter of that employee's duties and activities.  *See, e.g., Icicle Seafoods, Inc. v. Worthington,* 475 U.S. 709, 714 (1986).  However, Stratasys makes no allegation, and offers no evidence, that its reclassification of FSEs as non-exempt in January of 2013 was either precipitated by or coincided with any change in their duties or activities.  And in fact, Longlois specifically testified in his deposition in February of 2013 that his job duties had not changed since Stratasys re-hired him as an FSE in 2007.
       Stratasys thus attempts to persuade the Court that the very same duties and activities that it concedes made Longlois a non-exempt employee after January of 2013 nonetheless made him exempt before then.  Stratasys offers no explanation for this anomalous position.

demonstrate that [Longlois] fit 'plainly and unmistakably within [the] terms and spirit'" of at least one of them. *Spinden v. GS Roofing Prods. Co.,* 94 F.3d 421, 426 (8th Cir. 1996) (quoting *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392 (1960)).

The exemptions include: (1) "any employee employed in a bona fide executive, administrative, or professional capacity," 29 U.S.C. § 213(a)(1); (2) "computer systems analysts, computer programmers, software engineers, and other similarly skilled computer employees," *id.* § 213(a)(17); and (3) "[e]mployees who perform a combination of exempt duties . . . for executive, administrative, professional, outside sales and computer employees." 29 C.F.R. § 541.708. Stratasys argues that the FLSA's administrative and/or combination exemptions applied to Longlois in his job as an FSE prior to January of 2013.[2]

In considering whether they did, how Longlois spent his working hours as an FSE is an issue of fact, while the "ultimate question . . . of 'whether [his] particular activities excluded [him] from the overtime benefits of the FLSA is a question of law . . . governed by the pertinent regulations promulgated by the Wage and Hour Administrator." *Spinden*, 94 F.3d at 426 (quoting *Icicle Seafoods,* 475 U.S. at 714). *See also Jarrett*, 211 F.3d at 1081 ("Disputes regarding the nature of an employee's duties are questions of fact, but the ultimate question whether an employee is exempt under the FLSA is an issue of law.").

As explained below, the material facts regarding Longlois' duties and activities as an FSE are not disputed. On this record, Stratasys cannot meet its burden of proving that Longlois fit plainly and unmistakably within any of the exemptions on which it relies.

---

[2]      In its Answer, Stratasys stated as an affirmative defense that "the administrative, computer, and/or combined exemptions" applied to Longlois. On these motions, however, Stratasys makes no argument that the computer exemption by itself would apply to Longlois. In any event, the computer exemption is discussed below under the heading of the combination exemption.

**1.   Administrative exemption.**

Stratasys first argues that the administrative exemption applied to Longlois.  That

exemption is defined by regulation as follows:

> The term "employee employed in a bona fide administrative capacity" in section
> 13(a)(1) of the [FLSA] shall mean any employee:
>
> (1)  Compensated on a salary or fee basis at a rate of not less than $455 per
>       week (or $380 per week, if employed in American Samoa by employers
>       other than the Federal Government), exclusive of board, lodging or other
>       facilities;
> (2)  Whose primary duty is the performance of office or non-manual work
>       directly related to the management or general business operations of the
>       employer or the employer's customers; and
> (3)  Whose primary duty includes the exercise of discretion and independent
>       judgment with respect to matters of significance.

29 C.F.R. §  541.200.  *See also* 29 U.S.C. § 213(a)(1) (authorizing the Secretary of Labor to

"define[] and delimit[]" the administrative exemption).

The first of the exemption's three conjunctive factors certainly applied to Longlois in his

position as an FSE, but the undisputed facts demonstrate that the latter two did not.

**a.   Management or general business operations.**

The regulations make clear that, as a function of the second factor, the administrative

exemption encompasses only work that is "directly related to assisting with the running or

servicing of the business, as distinguished, for example, from working on a manufacturing

production line or selling a product in a retail or service establishment."  29 C.F.R. §  541.201(a).

A job satisfies this factor where the employee's "primary duty" falls within

> functional areas such as tax; finance; accounting; budgeting; auditing; insurance;
> quality control; purchasing; procurement; advertising; marketing; research; safety
> and health; personnel management; human resources; employee benefits; labor
> relations; public relations, government relations; computer network, internet and
> database administration; legal and regulatory compliance; and similar activities.

29 C.F.R. § 541.201(b).

The record here cannot support Stratasys' contention that, as a Field Service Engineer, Longlois' primary duty was to perform "management or general business operations" work. To the contrary, the record before the Court shows that Longlois' primary duty as an FSE – his "principal, main, major or most important duty," 29 C.F.R. § 541.700(a) – was to provide technical support to Stratasys' customers by installing and servicing their printers in the field.

The basic rhythm of Longlois' workdays as an FSE is not disputed.[3] Longlois, who did not report to Stratasys' office, was based out of his home and dispatched by a supervisor. Upon receiving an assignment, Longlois reviewed the available information and arranged his own travel to the customer's location. Once on-site, he completed the assigned task, whether it be installing a newly-purchased printer or repairing one already installed. On these trips, Longlois also interacted with the customers, training them in operating the printer and its software as well as providing instruction in basic preventative maintenance. Then, with the assignment completed, Longlois filled out paperwork tracking the tasks he had performed for the customer and documenting his expenses. Afterwards, Longlois contacted the customers to follow up on his visit and ensure that they were satisfied with the work he had done.

Despite Stratasys' efforts to parse the language of the exemption in its favor, these facts cannot be construed to show that, as an FSE, Longlois was primarily engaged in performing "office or non-manual work directly related to the management or general business operations"

---

[3]    Indeed, Stratasys makes a point of crediting and relying on Longlois' deposition testimony regarding his work activities, writing in its memorandum that

> Longlois cannot escape his own testimony that his job duties consist of initial installation of hardware and software; problem diagnosis (troubleshooting); emergency and preventative maintenance; on-site customer support; traveling alone from his home office and working alone; training customers; and doing personal business when not at a customer's site.

of Stratasys or its customers, as the exemption requires.  The record is susceptible to no other conclusion but that "the character of [Longlois'] job as a whole," 29 C.F.R. § 541.700(a), was that of a customer service technician.  Indeed, Stratasys itself asserts pointedly in its memorandum that "Longlois' typical work day consisted of performing maintenance (85% of the day) and installations (10% of the day) at customers' work premises," acknowledges that "the far [sic] majority of [Longlois'] duties was problem solving broken 3D printers," and states as a "fact" that "85% of his job was troubleshooting, problem-solving and interfacing with the customer, alone, to solve their problem with the 3D printer to their satisfaction."

This is not the sort of work that is described in the second factor of the administrative exemption.

**b.  Discretion on matters of significance.**

Furthermore, even if Stratasys could carry its burden with respect to the second factor, its contention that Longlois' work as an FSE fit within the administrative exemption would nonetheless fail on the third factor.  There, the exemption requires that the employee's "primary duty include[] the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200.

Longlois' primary duty, as just noted, was to install and service customers' printers in the field.  According to Stratasys, that duty required Longlois to exercise the requisite "discretion and independent judgment" because, on his site visits, he was "virtually unsupervised" in his interactions with the customers and had to "troubleshoot, diagnose and resolve any problems" with their printers.

However, the regulations explicitly state that, to satisfy the exemption, "[t]he exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards described in manuals or other sources." 29 C.F.R. § 541.202(e). Yet that is precisely what Longlois did. The record demonstrates that, to install and service printers, Longlois followed checklists and manuals provided to him by Stratasys. Even when a broken printer presented a difficult or unfamiliar problem, Longlois used his skill and experience – what he called in his deposition his "instinct" – to apply and adapt the techniques and procedures in those materials to it. In fact, Stratasys itself summed it up well when it pointed out that "Longlois testified that there could be 'endless' amount of things wrong with a 3D printer and that he was creative in performing his job duties. At the end of the job, Longlois would simply make sure he did everything on the checklist."

What's more, to satisfy the third factor of the exemption, the employee must have the authority or responsibility to use discretion and independent judgment "with respect to matters of significance." The regulations indicate that the term "matters of significance" includes "management policies or operating practices," "major assignments in conducting the operations of the business," "matters that have significant financial impact," "long- or short-term business objectives," and "represent[ing] the company in handling complaints, arbitrating disputes or resolving grievances." 29 C.F.R. § 541.202. Providing technical support to customers, though no doubt an important aspect of Stratasys' business, is thus not a "matter of significance" in the administrative sense in which that term is used in the exemption.

For any and all of these reasons, the administrative exemption does not apply to Longlois.

16

**2. Combination exemption.**

Stratasys next argues that the FLSA's combination exemption applied to Longlois.  The

combination exemption is set forth in the FLSA's regulations as follows:

> Employees who perform a combination of exempt duties as set forth in the
> regulations in this part for executive, administrative, professional, outside sales
> and computer employees may qualify for exemption.  Thus, for example, an
> employee whose primary duty involves a combination of exempt administrative
> and exempt executive work may qualify for exemption.  In other words, work that
> is exempt under one section of this part will not defeat the exemption under any
> other section.

29 C.F.R. §  541.708.  According to Stratasys, Longlois qualified for this exemption prior to

January of 2013 because his primary duty involved a combination of exempt administrative and

exempt computer work.

This argument fails.  As discussed above, Longlois' work as an FSE did not fall within

the administrative exemption.  Nor did his job duties and activities satisfy the requirements for

the computer exemption, which are as follows:

> The [overtime protections] of this title shall not apply with respect to . . . any
> employee who is a computer systems analyst, computer programmer, software
> engineer, or other similarly skilled worker, whose primary duty is—
>
> > (A) the application of systems analysis techniques and procedures, including
> > consulting with users, to determine hardware, software, or system
> > functional specifications;
> > (B) the design, development, documentation, analysis, creation, testing, or
> > modification of computer systems or programs, including prototypes,
> > based on and related to user or system design specifications;
> > (C) the design, documentation, testing, creation, or modification of computer
> > programs related to machine operating systems; or
> > (D) a combination of duties described in subparagraphs (A), (B), and (C) the
> > performance of which requires the same level of skills, and
>
> who, in the case of an employee who is compensated on an hourly basis, is
> compensated at a rate of not less than $27.63 an hour.

29 U.S.C. § 213(a)(17).  *See also* 29 C.F.R. § 541.400(b).

17

Stratasys makes little effort to show how any of Longlois' duties could satisfy any of these factors. Instead, it simply asserts that "[s]ome of [Longlois'] duties, if not administrative, could very well fall under the computer professional exemption" because: those "duties consisted of installing, maintaining, troubleshooting and diagnosing Stratasys' 3D printing hardware and software"; he "must test the printers prior to leaving the customer, and may make modifications (albeit temporary) while waiting for a part to arrive"; and he "liken[ed] himself to a professional (an accountant), . . . as [FSEs] must code their expenses with a general ledger code."

This is clearly insufficient. Stratasys' loose treatment of the computer exemption is similar to one that was roundly rejected by the Sixth Circuit:

> [The employer] selectively identifies certain words from this [exemption]—particularly "consulting with users" and "testing"—and applies them out of context. There is simply no evidence that [the employee] "consults with users, to determine hardware, software, or system functional specifications." [The employee] "consults with users" for purposes of repair and user support, not to determine what "hardware, software, or system functional specifications" the [employer's] facility will employ, as a systems analyst might. Likewise, when [the employee] does "testing," he is testing things to figure out what is wrong with a workstation, printer, or piece of cable so that he can restore it to working order. He is not doing the type of testing that is involved in creating a system, determining the desired settings for a system, or otherwise substantively affecting the system. Indeed, he is merely ensuring that the particular machine is working properly according to the specifications designed and tested by other . . . employees. Maintaining the computer system within the predetermined parameters does not require "theoretical and practical application of highly-specialized knowledge in computer systems analysis, programming, and software engineering."

*Martin v. Indiana Michigan Power Co.*, 381 F.3d 574, 580-81 (6th Cir. 2004).

Furthermore, Stratasys conspicuously fails to acknowledge that the regulations specify that servicing of computer and related equipment – which, it is undisputed, was the core of Longlois' job as an FSE – does not fall within the scope of the computer exemption:

> The exemption for employees in computer occupations does not include employees engaged in the manufacture or repair of computer hardware and

related equipment. Employees whose work is highly dependent upon, or facilitated by, the use of computers and computer software programs (e.g., engineers, drafters and others skilled in computer-aided design software), but who are not primarily engaged in computer systems analysis and programming or other similarly skilled computer-related occupations identified in § 541.400(b), are also not exempt computer professionals.

29 C.F.R. § 541.401.

In short, on this record, Stratasys cannot meet its burden of proving that the administrative, computer, or combination exemptions applied to Longlois in his job as an FSE. Summary judgment on the issue of misclassification is therefore granted to Longlois.

### B. Overtime hours.

On a claim for unpaid overtime compensation, misclassifying an employee as exempt does not by itself give rise to an employer's liability; rather, the employer will be liable for damages only if the employee worked overtime hours for which the employer, owing to that misclassification, failed to pay him an overtime premium. *See Holaway*, 771 F.3d at 1059 (declining to address misclassification where employee "failed to put forth evidence sufficient to demonstrate he ever worked more than forty hours per week"). Accordingly, the next point of contention between the parties centers on whether the record does, or could, establish that Longlois in fact worked overtime hours prior to January of 2013.

The FLSA requires an employer to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him . . . ." 29 U.S.C. § 211(c). Compliance with this provision of the statute by the employer – the party "who is in position to know and to produce the most probative facts concerning the nature and amount of work performed," *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds*, Portal–to–Portal Act of 1947,

Pub.L. No. 80–49, 61 Stat. 84 – would, of course, greatly aid the inquiry into whether the

employee in fact worked overtime hours for which he was not properly compensated, and if so in

what amount.

Here, however, Stratasys concedes that it did not keep records of the hours that Longlois

worked during the period in which it misclassified him.  It has long been the law that, in these

circumstances, "employees are not denied recovery under the FLSA simply because they cannot

prove the precise extent of their uncompensated work." *Holaway*, 771 F.3d at 1059 (citing *Dole*

*v. Tony & Susan Alamo Found.,* 915 F.2d 349, 351 (8th Cir. 1990)).  Instead, the employee's

overtime hours are to be determined through a burden-shifting scheme:

> When the employer has kept proper and accurate records the employee may easily
> discharge his burden by securing the production of those records.  But where the
> employer's records are inaccurate or inadequate and the employee cannot offer
> convincing substitutes a more difficult problem arises.  The solution, however, is
> not to penalize the employee by denying him any recovery on the ground that he
> is unable to prove the precise extent of uncompensated work.  Such a result would
> place a premium on an employer's failure to keep proper records in conformity
> with his statutory duty; it would allow the employer to keep the benefits of an
> employee's labors without paying due compensation as contemplated by the Fair
> Labor Standards Act.  In such a situation we hold that an employee has carried out
> his burden if he proves that he has in fact performed work for which he was
> improperly compensated and if he produces sufficient evidence to show the
> amount and extent of that work as a matter of just and reasonable inference.  The
> burden then shifts to the employer to come forward with evidence of the precise
> amount of work performed or with evidence to negative the reasonableness of the
> inference to be drawn from the employee's evidence.  If the employer fails to
> produce such evidence, the court may then award damages to the employee, even
> though the result be only approximate.

*Anderson*, 328 U.S. at 686-88.  *Accord Holaway*, 771 F.3d at 1059; *Carmody v. Kansas City Bd.*

*of Police Comm'rs,* 713 F.3d 401, 406 (8th Cir. 2013).

Stratasys focuses its request for summary judgment here, arguing that Longlois cannot

meet his initial burden on the record he has assembled.  For his part, Longlois seeks partial

summary judgment in the other direction, arguing that the record reveals no genuine dispute as to

the material fact that he "did, indeed, work some workweeks over 40 hours and was not compensated for such."

However, neither of these positions is persuasive under the Rule 56 standards, and both motions, in this respect, are therefore denied.  This conclusion flows directly from the irregular manner in which the motions have been presented and argued to the Court, and it turns particularly on considerations surrounding two pieces of evidence: Longlois' Third Supplemental Answers to Stratasys' interrogatories and Lapidus' proposed expert testimony.  These issues are addressed below.

### 1.  Procedural history.

Longlois began this round of motion practice when he filed his motion for partial summary judgment in late September of 2014; Stratasys filed its motion approximately six weeks later, in early November of 2014.  The relevant procedural history, however, stretches back to the fall of 2012, when Longlois joined the *Holaway* action as an opt-in plaintiff.  That move triggered Longlois' duty to disclose to Stratasys his computation of his claimed damages under Rule 26(a)(1)(A)(iii) and to respond, under Rule 33(b), to its interrogatories seeking information about the overtime hours for which he claims he was not properly compensated.

Longlois initially made those disclosures and provided those answers between December of 2012 and May of 2013.  During that period, Longlois served Stratasys with what he refers to as his Attachment A, a document in which he calculates the amount he is owed in unpaid overtime compensation by "approximat[ing]" that he worked 60 hours per week in every week between August of 2009 and December of 2012.  Attachment A, however, contains no information regarding any specific hours Longlois claims to have worked in any specific

workweek during that period.  Similarly, in his initial and first two supplemental responses to Stratasys' interrogatories, Longlois described only in very general terms the pattern of his workweeks as an FSE, based upon his own recollections.

Unsatisfied with that information, Stratasys pressed Longlois and his fellow *Holaway* plaintiffs to use the contemporaneous business records it had disclosed to them to account for the specific overtime hours they claimed to have worked in particular workweeks.  They refused. *See* Order of June 17, 2013, *Holaway v. Stratasys*, No. 12-cv-998 (PAM/JSM), ECF No. 145 at 2-8.  Stratasys then filed a motion requesting that the Magistrate Judge compel them to do so. The Magistrate Judge, however, determined that the parties' dispute over whether Longlois and his *Holaway* co-plaintiffs should utilize Stratasys' business records to identify the specific overtime hours they claim to have worked would "only go[] to the weight of the evidence and d[id] not lead to the conclusion that plaintiffs did not answer the interrogatories."  *Id.* at 12.  But with that said, and with fact discovery having by that time closed in *Holaway*, the Magistrate Judge found that "this lawsuit has reached a point where [Stratasys] must be able to rely on plaintiffs' supplemental answers" and disclosures; the Magistrate Judge therefore "precluded [the plaintiffs] from changing at trial their damage calculations or the basis for their calculations."  *Id.* at 14.

The *Holaway* co-plaintiffs' decision to stand on the general answers and disclosures they had made regarding their claimed overtime hours proved to be ill-fated for Holaway.  The case was soon decertified as a collective action, and Holaway's claim was therefore the only one to be adjudicated on its merits when Stratasys later moved for summary judgment.  On that motion, the district court determined that Holaway's claim failed due to the weakness of his evidence:

> Holaway's only evidence of the hours he worked is his own testimony.  Such testimony may be sufficient in some cases to establish the threshold issue of

22

damages, but here Holaway's testimony is wildly inconsistent and at times wholly implausible. It cannot therefore support his burden in this case. The employer's "failure to provide accurate time records reduces the [employee's] burden, but does not eliminate it." *Carmody v. Kansas City Bd. Of Police Comm'rs*, 713 F.3d 401, 407 (8th Cir. 2013). Holaway may have a relaxed burden, but he "must still prove the existence of damages." *Id.* As in *Carmody*, all Holaway offers are vague and general "approximations" that simply do not suffice to allow any reasonable factfinder to determine that he in fact worked more than 40 hours in any given week. "[W]ithout specific dates worked [or] specific hours worked" Holaway has failed to provide evidence of overtime hours worked in violation of the FLSA. *Id.* Summary judgment is therefore appropriate.

Order of Dec. 20, 2013, *Holaway v. Stratasys*, No. 12-cv-998 (PAM/JSM), ECF No. 90 at 6-7.

Longlois had filed this action just two weeks before that order issued in December of 2013. But, even confronted at the very outset of this case with the *Holaway* court's clear finding that an FLSA plaintiff's "vague and general 'approximations'" of his overtime hours do not suffice under governing Eighth Circuit precedent,[4] Longlois made no move here to revise or expand upon the information regarding his claimed hours that he had provided to Stratasys during discovery in *Holaway*. In fact, Longlois took the opposite tack in this case and definitively indicated, both to Stratasys and to the Court, that he had nothing to add to the disclosures and interrogatory answers he had already provided.

For instance, Longlois took the position in the Rule 26(f) Report, which the parties presented to the Court in March of 2014, that "all fact discovery and expert discovery" relevant to this case had been completed "[p]rior to [d]e-certification" of *Holaway*. Rule 26(f) Report, ECF No. 14 at 2. Longlois therefore requested that this action proceed immediately to dispositive motion practice and trial. *Id.* Stratasys, though, stated that some "[m]inimal discovery is needed." *Id.* at 5.

---

[4]       Longlois has been represented at all times – both in this case and during his time as an opt-in plaintiff in *Holaway* – by the same attorney who represented Holaway.

Longlois "strongly oppose[d Stratasys'] proposal to re-open discovery," *id.*, but the Magistrate Judge evidently concurred with Stratasys on the point.  The Scheduling Order, which issued in early September of 2014, set the deadlines for expert discovery discussed above in relation to Longlois' *Daubert* motion while also providing a short period for fact discovery, all aspects of which were to "be commenced in time to be completed" by November 15, 2014.  Pretrial Scheduling Order, ECF No. 42 at 1.

In mid-September of 2014, approximately two weeks after that Scheduling Order issued, Longlois served Stratasys with his initial disclosures for this case.  There, he represented that

> Plaintiff Longlois' damages and related information and documents in this matter are ***"identical"*** to his damages and related information, documents, deposition testimony and his affidavit disclosed, provided, produced, and served in the *Holaway* matter and therefore such information and documents are incorporated by reference herein and will be used by Plaintiff in this matter, which includes but is not limited to Plaintiff Longlois' Supplemental Answers to Defendant's Interrogatories, dated April 1, 2013, along with Plaintiff's "Attachment A" thereto dated March 29, 2013 containing the hereinunder plaintiff's damage information.

With this statement, Longlois effectively certified that his Attachment A and the interrogatory answers he had provided to Stratasys during *Holaway* amounted to a "complete and correct" accounting as to his claimed overtime hours.  *See* Fed. R. Civ. P. 26(g)(1) ("By signing [a disclosure], an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry [the disclosure] is complete and correct as of the time it is made.").

What's more, only one week after thus declaring his intention to stand on those *Holaway* materials in this case without conducting any further discovery – and still six weeks before the November 15 fact discovery deadline – Longlois in fact did so by moving for partial summary judgment.  In his briefing, Longlois offers little support for his position that the record leaves no genuine dispute as to whether he worked uncompensated overtime hours.  Longlois points only

24

to a portion of a declaration he had submitted during *Holaway* in which he states that he "routinely work[ed] significant overtime hours beyond the standard 40 hour workweek," while also quoting from the depositions, taken during *Holaway,* of a manager and supervisor at Stratasys who testified that to their knowledge "some" FSEs had "sometimes" worked more than forty hours per week.  While Longlois need not match "the exactness and precision of measurement that would be possible had [Stratasys] kept records [of his overtime] in accordance with" the FLSA, *Anderson*, 328 U.S. at 688, none of this very limited evidence describes or references any specific hours that Longlois claims to have worked in any workweek.

After briefing on Longlois' motion was completed, the Eighth Circuit issued its decision on Holaway's appeal, affirming the district court's grant of summary judgment to Stratasys.  In coming to that decision, the Eighth Circuit concurred with the district court that

> Holaway . . . failed to meet even the relaxed evidentiary standard because he failed to put forward any evidence of the amount and extent of his work in excess of forty hours a week for any week worked for Stratasys, let alone evidence of excess hours worked every week of his employment.  Holaway has, instead, put forth contradictory and bare assertions of his overtime hours worked.  At various times, Holaway has estimated his work hours as between forty-five and seventy hours a week, yet has failed to specifically account for the hours worked.  In fact, Holaway failed to put forth any evidence regarding specific weeks where he worked beyond forty hours.  Holaway has also failed to provide a meaningful explanation of how he arrived at his final estimate of sixty hours a week, every week, of his employment.  Holaway provided only vague testimony and failed to reference specific days and hours worked.  This failure includes a failure by Holaway to check his hours worked against any business records kept by Stratasys.  In his calculations regarding his typical hours worked, Holaway also failed to take into account any paid holidays, any paid vacation, or any days he was on duty at home yet never was called out to install or service a printer.

> Even taking the evidence in the light most favorable to Holaway, the evidence is inconsistent and provides no details which would allow a jury to determine Holaway worked beyond forty hours in any specific week of his employment.  Therefore, Holaway has failed to come forward with "sufficient evidence to show the *amount and extent* of [overtime] work" which would allow a fact-finder to find overtime hours "as a matter of just and reasonable inference."  *Anderson,* 328 U.S. at 687–88, 66 S.Ct. 1187 (emphasis added).

25

*Holaway*, 771 F.3d at 1059-60.

The Eighth Circuit issued this decision on November 6, 2014.  Stratasys filed its motion for summary judgment the next day, arguing that *Holaway* dictates that summary judgment be awarded to it here because Longlois, like Holaway, has failed to put forth any evidence that he "worked beyond forty hours in any specific week of his employment."  *Id.* at 1060. Understandably, given that Longlois had emphatically chosen to rely on the materials from *Holaway* – including by filing his own motion for partial summary judgment and his *Daubert* motion on that record – Stratasys tailored its motion to that evidence and did not wait to file it until the November 15 deadline for fact discovery passed.

However, five days later, and just three days shy of the November 15 discovery deadline, Longlois served Stratasys with his Third Supplemental Answers to the interrogatories it had posed to him two years prior during the *Holaway* litigation.  Apparently spurred by the Eighth Circuit's emphasis in *Holaway* that Holaway had offered no "evidence regarding specific weeks where he worked beyond forty hours" and had failed to "check his hours worked against any business records kept by Stratasys," *id.* at 1059, Longlois purports in the Third Supplemental Answers to have now done just that.  In particular, Longlois' Third Supplemental Answers supplement his previous responses by reconstructing seven of his workweeks between 2009 and 2012 based on a large number of contemporaneous business records, including payroll documents, time sheets, work assignments and calendars, expense reports, and computer log-in records.  For each day in these seven "illustrative" workweeks, Longlois provides a description of his work activities and tallies the total number of hours he spent performing them.  Adding them up, Longlois asserts that he worked a substantial number of overtime hours – ranging from 18 to 25 – in each one of the reconstructed workweeks.

26

Approximately two weeks after serving Stratasys with this new information, Longlois filed his memorandum in opposition to Stratasys' motion for summary judgment. There, on the issue of his overtime hours, Longlois reiterates the evidence from *Holaway* that he previously presented on his own motion for partial summary judgment. Notably, though, Longlois makes no attempt at all to distinguish those materials from the "vague and general" showing that the district court and the Eighth Circuit found insufficient in *Holaway*. However, Longlois also submits his Third Supplemental Answers. According to Longlois, even if the rest of his evidence is inadequate, his seven reconstructed workweeks "provide[] the work-related overtime *specificity* required" for his claim to survive Stratasys' motion for summary judgment.

### 2. Third Supplemental Answers.

Stratasys strongly objects, on several grounds, to any consideration of the contents of Longlois' Third Supplemental Answers. For the reasons explained below, the Court agrees with Stratasys that, consistent with Federal Rules of Civil Procedure 26 and 37, Longlois may not use his Third Supplemental Answers as evidence.

### a. Rule 26(e)(1)(A).

The first consideration is whether Longlois provided Stratasys with his Third Supplemental Answers in a timely fashion. Federal Rule of Civil Procedure 26(e)(1)(A) requires

> [a] party who has made a disclosure [or] responded to an interrogatory [to] supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . .

The procedural history recounted above makes clear that Longlois' Third Supplemental Answers were not a timely "supplement[ation] or correct[ion]" of his prior disclosures and responses regarding the overtime hours he claims to have worked. Three points from that sequence of events bear particular emphasis. First, from the time Longlois filed this action in December of 2013 through briefing on his own dispositive motion, he repeatedly represented that he had completely and accurately accounted for his claimed overtime hours. Second, only *after* Stratasys filed its motion for summary judgment did Longlois attempt to shift the evidentiary foundation for his claim, and then by supplementing his answers to interrogatories that Stratasys had posed to him a full two years prior, in November of 2012. *See* Affidavit of Service, *Holaway v. Stratasys*, No. 12-cv-998 (PAM/JSM), ECF No. 83-1 at 23. And third, with that supplementation, Longlois provided Stratasys with the very information that it had specifically requested of him, but which he had steadfastly refused to provide, during a series of discovery disputes in *Holaway* over the first half of 2013. *See* Order of June 17, 2013, *Holaway v. Stratasys*, No. 12-cv-998 (PAM/JSM), ECF No. 145.

Longlois cannot claim here that the Eighth Circuit's *Holaway* decision, which evidently prompted him to compose his Third Supplemental Answers, renders them timely. *Holaway* is an application of, not a departure from, precedent that requires an FLSA plaintiff to put forth "evidence . . . which would allow a jury to determine [that he] worked beyond forty hours in any specific week of his employment." 771 F.3d at 1060. *See also Carmody*, 713 F.3d at 406 (affirming grant of summary judgment to employer because employees offered no "record evidence of a single hour worked over forty hours that did not receive overtime wages or flextime" and their "unsupported estimations of the unpaid hours are not enough"). What's more, Longlois' counsel was personally on notice from the district court's December 2013 grant

of summary judgment to Stratasys that "vague and general 'approximations'" of a plaintiff's overtime hours are inadequate.

In any event, even if Longlois did not recognize the implications that precedent held for his case until the Eighth Circuit's *Holaway* decision, timeliness under Rule 26(e)(1)(A) is measured from "the date when the facts are discovered, not some nebulous date when counsel first realized that there was some significance to them." *Havenfield Corp. v. H & R Block, Inc.*, 509 F.2d 1263, 1272 (8th Cir. 1975). In this respect, Longlois suggests in his briefing that he did not receive the contemporaneous business records on which he based his Third Supplemental Answers until Stratasys itself supplemented the initial disclosures it had made during *Holaway* here in September of 2014.

That is not the case. The record demonstrates unequivocally that Stratasys disclosed the business records in its possession relating to Longlois' work as an FSE prior to January of 2013 – the period implicated by Longlois' claim – by, at the latest, June of 2013. *See* Letter of June 28, 2013, ECF No. 72-12 at 1 (letter from Longlois' counsel to Stratasys' counsel evincing that, as of June 28, 2013, Longlois had been provided with his personnel file, pay stubs, payroll documents, and computer records); Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, ECF No. 71 at 17-18 (citing and explaining the same). The supplemental disclosures Stratasys made here in September of 2014 only updated its *Holaway* disclosures to include records that had been generated after January of 2013, such as Longlois' 2013 payroll records and performance review and documentation relating to his resignation from the company in August of 2014. Those supplemental disclosures have no bearing on Longlois' Third Supplemental Answers, which contain reconstructions of seven workweeks between October of 2009 and November of 2012.

In a final effort to justify the timing of his Third Supplemental Answers, Longlois emphasizes that he provided them to Stratasys "[d]uring the discovery period" provided for by the Scheduling Order.  It is true that Longlois served the document three days before the November 15 close of fact discovery.  That, however, does not render it timely; in fact, Longlois' handling of the matter violated the discovery provisions of both the Scheduling Order and the Local Rules of this District.

The Scheduling Order, consistent with Local Rule 16.2(d)(3), specifies that "[a]ll fact discovery, including depositions, of any kind shall be commenced in time to be completed" by that deadline.  It is evident to the Court, as it clearly was to Longlois himself, that his belated supplementation did not leave Stratasys with sufficient time to depose him on its contents before the deadline for doing so expired on November 15.  Indeed, Longlois' counsel has submitted the emails he exchanged with Stratasys' counsel immediately after serving the Third Supplemental Answers, in which he offers to make Longlois available for a deposition after the November 15 deadline.  Stratasys' counsel declined that offer in light of the motions pending before the Court.

The modification of the Scheduling Order that Longlois proposed to Stratasys does not mitigate the tardiness of his supplementation.  In fact, that modification was not within Longlois' discretion to fashion.  The Local Rules require parties to strictly comply with scheduling orders. And, under Local Rule 16.3, a change to a scheduling order – "even a stipulated or uncontested" one – may only be granted by the Court upon a motion that "establish[es] good cause for the proposed modification" and "explain[s] the proposed modification's effect on any deadlines." No such motion was made.

For all of these reasons, Longlois' Third Supplemental Answers were untimely.

**b.  Rule 37(c)(1).**

The second step of the analysis proceeds under Rule 37(c)(1).  According to that rule, a party that fails to "supplement or correct its disclosure or response . . . in a timely manner" as Rule 26(e) requires "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

To determine whether exclusion of the information contained in an untimely supplement is warranted under this rule, the Eighth Circuit has in similar circumstances approved of the use of a "balancing test" by which the district court is to "evaluate[] the importance of the evidence to the [plaintiff], the justifications for [his] failure to comply [with the requirements of Rule 26], the prejudice to the [defendant] if the evidence were allowed to be used, and whether a continuance would effectively cure the prejudice."  *Carmody*, 713 F.3d at 405 (citing *Citizens Bank of Batesville, Ark. v. Ford Motor Co.,* 16 F.3d 965, 966 (8th Cir. 1994)).  Furthermore, if "striking the [untimely evidence] would be tantamount to dismissal," the court is to consider "lesser sanctions" before excluding it.  *Id.* (citing *Keefer v. Provident Life and Accident Ins. Co*., 238 F.3d 937 (8th Cir. 2000)).

These considerations weigh in favor of excluding the Third Supplemental Answers.  The information contained in that document is clearly of central importance to Longlois' claim.  With misclassification established, Stratasys' liability, and therefore Longlois' right to recover, turn on his ability to "prove[] that he has in fact performed work for which he was improperly compensated and [to] produce[] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Anderson*, 380 U.S. at 688.  The seven workweeks Longlois reconstructs in his Third Supplemental Answers, supported by the host of

contemporaneous business records on which he purports to base them, would no doubt satisfy that burden.

This, however, only serves to highlight the absence of any justification for Longlois' untimely supplementation.  No favorable explanation or excuse for Longlois' failure to provide such an important piece of discovery at an earlier point in this litigation – or, for that matter, two years ago in *Holaway* when it was first requested – is apparent.  As discussed above, none of the justifications that Longlois has suggested – that the Third Supplemental Answers were assembled in response to the Eighth Circuit's *Holaway* decision, that they were based on records only provided to him in September of 2014, and that they were served on Stratasys before the discovery deadline – are persuasive.

The fundamental importance of the Third Supplemental Answers to Longlois' claim also brings into relief the prejudice that accepting it here would cause to Stratasys.  Because of the late date on which Longlois served the document – after his own summary judgment motion was fully briefed and after Stratasys' summary judgment motion was filed – providing Stratasys with an opportunity to depose him on it would, at a bare minimum, require a motion and a modification of the Scheduling Order, necessitate another round of briefing on these dispositive motions, and delay the case's trial ready date.  Such an approach would impose substantial costs on Stratasys and require the expenditure of additional judicial resources.  What it would not do is place on Longlois the burden for unnecessarily complicating these proceedings, properly hold him to account for his apparent lack of diligence, or deter future litigants from committing similar lapses with matters of high evidentiary import.

For these reasons, the Third Supplemental Answers are stricken.

**3. Lapidus.**

That, however, does not necessarily mean that Stratasys is entitled to summary judgment. Even after the exclusion of the Third Supplemental Answers, the record remaining before the Court still contains a prime source of detailed information regarding specific overtime hours worked by Longlois before January of 2013: Neil Lapidus, Stratasys' expert.  As discussed above in relation to Longlois' *Daubert* motion, Lapidus sets forth in his report his analysis and conclusions regarding the particular activities Longlois engaged in and the specific hours he worked on a daily basis between 2009 and 2012.  The report reflects that, in Lapidus' estimation, the contemporaneous business records he reviewed show that Longlois worked more than forty hours in the vast majority of the weeks during that period.[5]

Surprisingly, though, given this content, neither Longlois nor Stratasys addressed Lapidus' report at all in their summary judgment briefing.  And, when questioned on the issue at oral argument, Longlois and Stratasys each persisted in the position they took with respect to Longlois' *Daubert* motion.  Consequently, the Court is here faced with a curious situation in

---

[5]      For the sake of illustration, Lapidus' report compares with Longlois' seven reconstructed workweeks as follows:

| Workweek | Longlois' Third Supplemental Answers | Lapidus' report |
|----------|--------------------------------------|-----------------|
| 10/31/2009 | 61 hours | 52 hours |
| 6/19/2010 | 60 hours | 51.50 hours |
| 6/26/2010 | 59 hours | 52.25 hours |
| 1/1/2011 | 61 hours | 66.25 hours |
| 12/10/2011 | 65 hours | 70.25 hours |
| 10/27/2012 | 62 hours | Not included |
| 11/3/2012 | 58 hours | Not included |

which the plaintiff has vigorously attempted to exclude the very evidence that would meet his burden for him, while the defendant has championed its admission.

In any event, it has been decided that Lapidus' proposed testimony is admissible.  The Court is consequently free to consider it, *see* Fed. R. Civ. P. 56(c)(3), and, having already reviewed it in detail, will do so here.  Under the Rule 56 standards, Lapidus' accounting would clearly be sufficient evidence on which a jury could both conclude that Longlois did work overtime hours for which he was not properly compensated and base a finding as to the total amount and extent of those hours. Summary judgment, of course, is not properly granted to a defendant where the evidence that may be presented at trial would be sufficient to sustain the plaintiff's claim. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251 (noting that "summary judgment should be granted where the evidence is such that it would require a directed verdict for the moving party") (internal quotation omitted).

With that said, the Court recognizes that Stratasys, though it designated Lapidus as a testifying expert, could decide not to call him as a witness at trial.  Whether that would deprive Longlois of necessary evidence, however, has yet to be seen.  Longlois could attempt to call Lapidus to testify in his case in chief.  If that were to occur, it would be within the Court's discretion to determine whether Lapidus would testify.  *See Jasty v. Wright Medical Technology, Inc.*, 528 F.3d 28, 39 (1st Cir. 2008) (explaining that "a trial court has discretion to decide whether to require a [damages expert] to testify for an opposing party"); *Peterson v. Willie*, 81 F.3d 1033, 1037-38 (11th Cir. 1996) (explaining that, where an expert "witness has been designated as expected to testify at trial," the decision of whether to "permit[ the expert] to testify for the opposing party" is "committed to the sound discretion of the district court"); *Ferguson v. Michael Foods, Inc.*, 189 F.R.D. 408 (D.Minn. Aug. 24, 1999) (concluding that "the

balance of interests under Rule 403 weighs heavily against allowing plaintiff to call [defendant's medical expert] as a trial witness").  The parties, however, have not addressed this contingency here.

At bottom, Longlois' Third Supplemental Answers are not admissible, but Lapidus' proposed testimony is.  The uncertainty surrounding the manner in which Lapidus' testimony may be heard at trial, if it will at all, counsels against a grant of summary judgment to either party here.  Both Longlois' and Stratasys' motions are therefore denied insofar as they seek summary judgment around the issue of Longlois' overtime hours during the time that he was misclassified as an exempt employee.

### C.  Damages.

In addition to the questions of whether Longlois was misclassified prior to January of 2013 and, if so, whether he worked overtime hours during that period, the parties also each seek summary judgment on three discrete issues bearing on damages.  With Stratasys' liability still an open question as a result of the ruling explained above, consideration of two of those issues – relating to the statute of limitations and liquidated damages – must be deferred.  The third, however – the proper method for calculating unpaid overtime compensation – warrants some discussion.

### 1.  Willfulness.

The first premature dispute centers on how far back in time Longlois may reach in his attempt to recoup unpaid overtime compensation.  The FLSA contains a two-tiered statute of limitations, according to which an

action . . . to enforce any cause of action for . . . unpaid overtime compensation . . . may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued . . . .

29 U.S.C. § 255(a). *See also* 29 C.F.R. § 790.21(b)(1) (explaining that a cause of action for unpaid overtime compensation "'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends," and "an action to enforce such a cause of action shall be considered to be 'commenced' . . . [i]n individual actions, on the date the complaint is filed").

Longlois, of course, seeks a ruling here that a three-year limitations period applies, while Stratasys contends that two years is proper. However, as the FLSA ties this determination to a factual finding that the employer has committed a "willful violation" of the FLSA and it has not been established at this juncture that Stratasys committed any violation, this question cannot be properly considered here.

Furthermore, there is an additional issue that remains to be resolved in this area, but which the parties have not addressed. Longlois commenced this action with the filing of his Complaint on December 5, 2013. However, Longlois had previously "commenced an action" to assert his rights under the FLSA, as that term is used in the statute of limitations, by opting in to the *Holaway* matter after that case was conditionally certified as a collective action in October of 2012, and he participated in it until it was decertified in October of 2013. *See* 29 C.F.R. § 790.21(b)(2) ("[A]n action to enforce . . . a cause of action shall be considered to be 'commenced' . . . [i]n collective or class actions, as to an individual claimant . . . [o]n the . . . date when his written consent to become a party plaintiff is filed in the court").

These circumstances may warrant equitable tolling of the limitations period, whichever one is ultimately found to apply. *See Smithrud v. City of St. Paul*, 746 F.3d 391, 396 (8th Cir. 2014) (explaining that equitable tolling of a statute of limitations "requires a litigant to establish '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way'") (quoting *Pace v. DiGuglielmo,* 544 U.S. 408, 418 (2005)); *Jenkins v. Mabus*, 646 F.3d 1023, 1028-29 (8th Cir. 2011) (noting that the "doctrine of equitable tolling . . . should be invoked only in exceptional circumstances truly beyond the plaintiff's control"). The Court trusts that the parties will address this aspect of the statute of limitations at an appropriate time before trial.

### 2.   Good faith.

The second premature dispute involves the availability of liquidated damages. In addition to unpaid overtime compensation, the FLSA provides for a successful claimant to recover liquidated damages "in an additional equal amount." 29 U.S.C. § 216(b). Liquidated damages in this context are not a punitive measure against the employer, but are rather considered to be compensation "for the delay in payment of wages owed" to the employee. *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 941 (8th Cir. 2008) (internal quotation omitted). However, the FLSA also provides that

> if the employer shows to the satisfaction of the court that the act or omission giving rise to [the employee's] action [for unpaid overtime compensation] was in good faith and that [the employer] had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

29 U.S.C.A. § 260.

Unlike the willfulness of the employer's violation of the FLSA for statute of limitations purposes, which is a question of fact committed to the jury, the employer's good faith is for the Court to decide.[6]  Accordingly, Longlois urges the Court to find here that Stratasys did not act in good faith when it misclassified Longlois as exempt.  But with Stratasys' liability an open question for trial, this issue too is not ripe for adjudication.

### 3.  Regular rate of pay.

The third and final issue relating to damages on which the parties seek summary judgment is the question of how to compute the unpaid overtime compensation that Longlois could recover if he were to prevail on his claim.  Though the relevance of this issue too is predicated on Longlois establishing Stratasys' liability at trial, the parties' arguments lend themselves to a more substantive treatment here.

The FLSA mandates that a non-exempt employee receive compensation for any overtime hours worked "at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  "The employee's 'regular rate' is . . . the 'keystone'" of this requirement.  *Urnikis–Negro v. Am. Fam. Prop. Servs.,* 616 F.3d 665, 673 (7th Cir. 2010) (quoting *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945)).  However, determining what that regular rate would have been for Longlois during the time that he was misclassified is somewhat complicated by the fact that he received a salary, rather than an hourly rate.

---

[6]     Nevertheless, owing to the similarity between the inquiries into the willfulness of the employer's violation and its good faith, the results will most often be consistent.  *Jarrett*, 211 F.3d at 1084 ("Though we decline to go so far as to rule out the possibility of good faith and willfulness in an unusual case, we conclude that a district court's finding of employer good faith in the face of a jury's presumptively contrary finding of willfulness requires close scrutiny on appeal.").

Longlois argues that, for each overtime hour he worked, he is entitled to receive one-and-one-half times his regular rate of pay, as calculated by dividing his weekly salary by forty hours. Stratasys, however, contends that the fluctuating workweek ("FWW") method applies here. Under that approach, Longlois' regular rate of pay would be calculated by dividing his weekly salary by the total number of hours he actually worked in a given week, rather than by forty. *Id.* at 674. Because by this method the employee is thus deemed to have already been paid his "regular rate" for all of the hours he worked in a particular week – including any overtime hours – he would be entitled to an overtime premium equal to "only one-half of the regular rate for those [overtime] hours rather than time *plus* one-half." *Id.* at 675.

The Supreme Court addressed the question of how the regular rate of pay is to be determined for a salaried employee in *Overnight Motor Transp. Co., Inc. v. Missel*, 316 U.S. 572 (1942) *superseded on other grounds by statute as stated in Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 128 n.22 (1985). There, the Court explained that "[w]age divided by hours equals regular rate," and that "[w]here the employment contract is for a weekly wage with variable or fluctuating hours the same method of computation produces the regular rate for each week." *Id.* at 580. Following *Missel*, the Eighth Circuit articulated its holding as follows:

> In the case of an employee hired at an hourly wage, no computation is necessary to determine his regular rate of pay. His regular rate of pay is established by his contract of employment[.] In such a case the employee is entitled under the Act to receive for all hours worked in any week in excess of forty compensation at the rate of one and one-half times his contract hourly wage. In the case of an employee hired on a weekly basis for a definite weekly compensation, a computation is necessary in order to determine his regular rate of pay. If, by his contract of employment, he is hired on a fixed weekly salary for a workweek of a fixed number of hours, his regular rate of pay is determined by dividing the agreed weekly compensation by the agreed number of hours in the week for which the compensation is paid. If his employment is for a fixed weekly compensation for a week of variable or fluctuating hours, the employee's regular rate of pay must be determined by dividing his fixed weekly compensation by the number of hours actually worked in any workweek; and in cases of employment

> at a fixed weekly compensation for a workweek of fluctuating hours, the regular rate of pay of an employee will necessarily vary from week to week according to the number of hours worked.

*Landreth v. Ford, Bacon & Davis*, 147 F.2d 446, 448 (8th Cir. 1945).  *See also Mumbower v. Callicott*, 526 F.2d 1183, 1187 (8th Cir. 1975) ("For employees paid weekly, absent explicit proof of a mutual agreement for a rate of pay capable of delineation in hourly terms, the court must infer that the 'regular rate' is substantially that calculated by dividing the total weekly compensation by the number of hours scheduled in the workweek.").  Furthermore, the Eighth Circuit has used the FWW method to calculate the amount of unpaid overtime compensation owed to a plaintiff in a misclassification case such as this.  *See, e.g., Landreth*, 147 F.2d at 448-49; *Anderson v. Federal Cartridge Corp.*, 156 F.2d 681, 685 (8th Cir. 1946).  Other circuits have also done so more recently.  *E.g., Urnikis–Negro*, 616 F.3d at 681-82.[7]

Therefore, the FWW will apply under *Missel* if, in his work as an FSE prior to January of 2013, Longlois' weekly salary was "intended to compensate [him] not for 40 hours per week or some other fixed number of hours, but for any and *all* hours that [he] worked in a given week." *Id.* at 681.  On this question of fact, "[t]he parties' initial understanding of the employment arrangement [and] the parties' conduct during the period of employment must both be taken into account . . . ." *Black*, 732 F.3d at 499.

---

[7]     After the Supreme Court's *Missel* decision, the Department of Labor promulgated 29 C.F.R. § 778.114, an interpretive rule that "explains how and under what circumstances an employer may compensate an employee using the FWW method." *Urnikis-Negro*, 616 F.3d at 677-78.  The Seventh Circuit, characterizing § 778.114 as "forward-looking" and "nonremedial," determined in *Urnikis-Negro* that that rule may not be applied to retrospectively calculate the regular rate of pay of a misclassified employee. *Id.* at 678-79.  However, the court found that the FWW method itself, under *Missel*, should be, so long as "the employer and the employee [did] in fact agree[] that a fixed weekly salary w[ould] constitute payment at the regular rate for any and all hours worked." *Id.* at 679-80.

     This approach to the FWW in a misclassification case has been adopted in this District, *Ahle v. Veracity Research Co.*, 738 F.Supp.2d 896, 918-19 (D.Minn. 2010), and endorsed by other circuit courts, *e.g., Black v. SettlePou, P.C.*, 732 F.3d 492, 496-99 (5th Cir. 2013).  The Court finds it applicable here.

On this issue, neither party has shown the absence of a genuine dispute of material fact. Longlois argues that the FWW does not apply here because, "[p]rior to December 2012, FSEs including Longlois had no understanding with their employer Stratasys that they would receive a fixed weekly salary regardless of the amount of times they worked over a 40-hour workweek." However, the only evidence Longlois offers for that proposition is an email that Holaway sent to his fellow FSEs in February of 2012 expressing his view that FSEs were expected to work up to 60 hours per week "because Stratasys has decided not to hire sufficient people to do the job" and stating that "I for one am done with the extra hours.  I am paid for 40 hours per week and will give 40 hours per week but I am not willing to donate any more time than that."  Despite the clarity of Holaway's position, the question for this case is the understanding that Longlois and Stratasys reached regarding Longlois' salary.  Longlois offers no evidence that he, much less Stratasys, shared Holaway's perspective on the matter.

For its part, Stratasys neglects the central issue entirely.  It rests its argument that the FWW should apply in this case solely on the undisputed fact that Longlois was paid a salary, while failing to point to any evidence bearing on whether that salary was intended to compensate Longlois for a fixed or variable number of hours each week.

On this issue, then, neither party is entitled to summary judgment.


## Conclusion

Longlois' *Daubert* motion is granted with respect to Alexander Passantino and denied with respect to Neil Lapidus.  On the parties' summary judgment motions, summary judgment is granted to Longlois on the issue of misclassification.  In addition, Longlois' Third Supplemental Answers are excluded from the record.  All other issues remain open for resolution at trial.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Plaintiff's Motion for Summary Judgment on Defendant's Affirmative Defenses [ECF No. 43] is GRANTED IN PART and DENIED IN PART consistent with the memorandum above.

2. Plaintiff's Motion to Exclude Expert Testimony [ECF No. 48] is GRANTED IN PART and DENIED IN PART consistent with the memorandum above.

3. Defendant's Motion for Summary Judgment [ECF No. 65] is DENIED.

Dated: February 24, 2015                    s/Joan N. Ericksen
                                            JOAN N. ERICKSEN
                                            United States District Judge